No. 22-50834

# United States Court of Appeals
# for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff–Appellant,*

*v.*

JOSE GOMEZ QUIROZ,

*Defendant–Appellee.*

Appeal from the United States District Court
for the Western District of Texas
No. 4:22-CR-104-DC

## APPELLANT'S REPLY BRIEF FOR THE UNITED STATES

JAIME ESPARZA
United States Attorney

CHARLES E. FOWLER, JR.
Assistant United States Attorney
Western District of Texas
903 San Jacinto, Suite 334
Austin, Texas 78701
Phone: (512) 370-1265
Fax: (512) 916-5854

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................ i

TABLE OF AUTHORITIES ..................................................... ii

ARGUMENT IN REPLY ........................................................ 1

I.  *Bruen* did not overrule longstanding Supreme Court precedent letting the government restrict indicted defendants' rights. .................................................. 1

II.  The Second Amendment's plain text does not cover indicted felony defendants. .................................... 3

III.  Section 922(n) squares with the nation's historical tradition. ............................................................. 12

IV.  Section 922(n) is constitutional both facially and as applied to Quiroz. .............................................. 19

V.  Even if § 922(n) violates the Second Amendment, the district court erroneously dismissed the false-statement charge.................................................................. 22

CERTIFICATE OF SERVICE ................................................ 27

CERTIFICATE OF COMPLIANCE ........................................ 27

## TABLE OF AUTHORITIES

### Cases

*Battles v. United States*,
　No. 4:23-CV-00063-HEA,
　2023 WL 346002 (E.D. Mo. Jan. 20, 2023) ...................................... 7

*Bell v. Wolfish*,
　441 U.S. 520 (1979) ..........................................................................11

*Bryson v. United States*,
　396 U.S. 64 (1969) ............................................................23, 24, 25

*United States v. Gordon*,
　291 F.3d 181 (2d Cir. 2002) ...........................................................26

*United States v. Wendt*,
　No. 422CR00199SHLHCA1,
　2023 WL 166461 (S.D. Iowa Jan. 11, 2023) ............................ 2, 11, 20

*City of Los Angeles v. Patel*,
　576 U.S. 409 (2015) ..........................................................................21

*Coffin v. United States*,
　156 U.S. 432 (1895) ..........................................................................12

*Dennis v. United States*,
　384 U.S. 855 (1966) ..........................................................................23

*District of Columbia v. Heller*,
　554 U.S. 570 (2008) ................................................................... passim

*Gerstein v. Pugh*,
　420 U.S. 103 (1975) ..........................................................................10

*United States v. Jimenez-Shilon*,
　34 F.4th 1042 (11th Cir. 2022) ......................................................... 4

*Johnson v. United States*,
　576 U.S. 591 (2015) ..........................................................................20

*Kaley v. United States*,
　571 U.S. 320 (2014) .............................................................. 1, 10, 11

*Kay v. United States*,
　303 U.S. 1 (1938) ..............................................................................23

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ................................................................ 2

*NetChoice, L.L.C. v. Paxton*,
  49 F.4th 439 (5th Cir. 2022) ................................................. 20

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022) ................................................... passim

*Ramos v. Louisiana*,
  140 S. Ct. 1390 (2020) ........................................................... 5

*Range v. Att'y Gen.*,
  53 F.4th 262 (3d Cir. 2022) ............................................ 4, 17

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
  490 U.S. 477 (1989) ............................................................... 1

*United States v. Bena*,
  664 F.3d 1180 (8th Cir. 2011) .............................................. 9

*United States v. Black*,
  No. CR 22-133-01,
  2023 WL 122920 (W.D. La. Jan. 6, 2023) ............................ 7

*United States v. Bledsoe*,
  334 F. App'x 711 (5th Cir. 2009) .............................. 23, 25, 26

*United States v. Cabello*,
  33 F.4th 281 (5th Cir. 2022) ................................................ 22

*United States v. Castillo*,
  430 F.3d 230 (5th Cir. 2005) ............................................... 24

*United States v. Charles*,
  No. MO:22-CR-00154-DC,
  2022 WL 4913900 (W.D. Tex. Oct. 3, 2022) ...................... 14

*United States v. DaSilva*,
  No. 3:21-CR-267,
  2022 WL 17242870 (M.D. Penn. Nov. 23, 2022) ............... 4, 5

*United States v. Davis*,
  53 F.4th 833 (5th Cir. 2022) ................................................ 22

*United States v. Fencl*,
  No. 21-CR-3101 JLS,
  2022 WL 17486363 (S.D. Cal. Dec. 7, 2022) ............ 12, 16, 18

*United States v. Grant*,
No. CR 3:22-161-MGL-1,
2022 WL 16541138 (D.S.C. Oct. 28, 2022) ........................................ 8

*United States v. Graves*,
5 F.3d 1546 (5th Cir. 1993) ............................................................24

*United States v. Holden*,
No. 3:22-CR-30 RLM-MGG,
2022 WL 17103509 (N.D. Ind. Oct. 31, 2022) .................................25

*United States v. Hunter*,
No. 1:22-CR-84-RDP-NAD-1,
2022 WL 17640254 (N.D. Ala. Dec. 13, 2022) ................................. 8

*United States v. Kapp*,
302 U.S. 214 (1937)................................................................ 23, 25

*United States v. Kays*,
No. CR-22-40-D,
2022 WL 3718519 (W.D. Okla. Aug. 29, 2022)........................... 18, 19

*United States v. Kelly*,
No. 3:22-CR-00037,
2022 WL 17336578 (M.D. Tenn. Nov. 16, 2022).............................15

*United States v. Knox*,
396 U.S. 77 (1969).................................................................. 24, 25

*United States v. Lewis*,
No. CR-22-368-F,
2023 WL 187582 (W.D. Okla. Jan. 13, 2023)..................................16

*United States v. Martinez-Rodriguez*,
821 F.3d 659 (5th Cir. 2016).................................................... 22, 24

*United States v. Medrano*,
No. 3:21-CR-39,
2023 WL 122650 (N.D.W. Va. Jan. 6, 2023) .............................. 7, 8, 9

*United States v. Nutter*,
No. 2:21-CR-00142,
2022 WL 3718518 (S.D.W. Va. Aug. 29, 2022) ................................16

*United States v. Perez-Garcia*,
No. 22-CR-1581-GPC,
2022 WL 17477918 (S.D. Cal. Dec. 6, 2022) ...................................18

*United States v. Peterson*,
  977 F.3d 381 (5th Cir. 2020)............................................................22

*United States v. Salerno*,
  481 U.S. 739 (1987)............................................................1, 2, 19, 20

*United States v. Sanchez*,
  No. W-21-CR-00213-ADA,
  2022 WL 17815116 (W.D. Tex. Dec. 19, 2022) ............................ 7, 10

*United States v. Seiwert*,
  No. 20 CR 443,
  2022 WL 4534605 (N.D. Ill. Sept. 28, 2022)....................................10

*United States v. Skoien*,
  614 F.3d 638 (7th Cir. 2010)............................................................18

*United States v. Slye*,
  No. 1:22-MJ-144,
  2022 WL 9728732 (W.D. Pa. Oct. 6, 2022)......................................16

*United States v. Williams*,
  No. 121CR00362LMMLTW,
  2022 WL 18285005 (N.D. Ga. Nov. 14, 2022) ..................................13

*Wrenn v. District of Columbia*,
  864 F.3d 650 (D.C. Cir. 2017) .........................................................19

*Young v. Hawaii*,
  992 F.3d 765 (9th Cir. 2021)............................................................19

**Statutes**

18 U.S.C. § 922...........................................................................passim

18 U.S.C. § 3142 .............................................................................. 2

**Other Authorities**

*Law-Abiding*, Merriam-Webster (Jan. 27, 2023),
  https://www.merriam-webster.com/dictionary/law-abiding.............. 9

United States Courts, *Caseload Statistics Data Tables,
  Table D-4—U.S. District Courts–Criminal Judicial Business* (September
  30, 2022), https://www.uscourts.gov/statistics-reports/caseload-
  statistics-data-tables .......................................................................11

**Rules**

Fed. R. App. P. 32 ...............................................................................27

### Argument in Reply

Section 922(n) is constitutional both facially and as applied to Quiroz. Even if not, Quiroz could be convicted under § 922(a)(6) for lying to the government about his qualifications to buy a gun.

**I.    *Bruen* did not overrule longstanding Supreme Court precedent letting the government restrict indicted defendants' rights.**

This Court should uphold § 922(n) under the framework governing restrictions on indicted defendants' constitutional rights. (Gov't Br. 13–16.) Quiroz's sole response is a footnote claiming—without authority—that "[t]he *Bruen* framework plainly applies to all Second Amendment challenges," so that this Court need address the government's points only "in [that] context." (Def. Br. 13 n.2.)

Quiroz is wrong. "If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). The Supreme Court has held that indicted defendants' constitutional rights may yield to "substantial" nonpunitive liberty restrictions "as a result of the operation of our criminal justice system." *United States v. Salerno*, 481 U.S. 739, 749 (1987); *see also Kaley v. United States*, 571 U.S. 320, 329 (2014) (holding that an indictment may "serve the purpose of immediately depriving the accused of her freedom"). That

principle directly applies to § 922(n), which restricts those "under indictment for a" felony. Quiroz has never suggested that § 922(n) fails under *Salerno*'s framework. *See* 481 U.S. at 746–47.

*Bruen* did not displace this longstanding framework governing restrictions on indicted defendants' rights. It clarified the framework for Second Amendment claims in the context of a sweeping public-carry ban. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S. Ct. 2111, 2122–23 (2022). But it did not consider—or even discuss in *dicta*—gun restrictions applicable only to indicted defendants. Nor did the Court imply that its pronouncement tweaked how other lines of constitutional authority apply to gun restrictions. To the contrary, it reaffirmed that the right to bear arms is subject to the same "body of rules [as] the other Bill of Rights guarantees." *Id.* at 2156 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (plurality op.)). *Cf.* *United States v. Wendt*, No. 422CR00199SHLHCA1, 2023 WL 166461, at *5 (S.D. Iowa Jan. 11, 2023) (rejecting a facial Second Amendment challenge to the pretrial gun restriction in 18 U.S.C. § 3142(c)(1)(B)(viii) because the court was "unwilling, without much clearer guidance from higher courts, to conclude that the Supreme Court *sub silentio* overruled *Salerno* … when it decided *Bruen*").

Thus, absent additional guidance from the Supreme Court, the government may restrict an indicted defendant's Second Amendment rights

pending trial just as it may restrict his First, Fourth, Fifth, Sixth, and Eighth Amendment rights. Section 922(n) imposes just such a restriction.

## II.   The Second Amendment's plain text does not cover indicted felony defendants.

If the *Bruen* framework applies, Quiroz's claim fails at *Bruen*'s first step because the Second Amendment's text does not cover indicted felony defendants. Quiroz does not dispute that he has the burden at this step. (Gov't Br 17–18.)

**1.** Quiroz misreads the government's argument for excluding him from the Second Amendment's textual coverage. Quiroz focuses on the words "the people" in the Second Amendment. (Def. Br. 15–17.) He argues that, in *District of Columbia v. Heller*, the Supreme Court said that each time the Constitution uses "the people," "the term unambiguously refers to all members of the political community, not an unspecified subset." 554 U.S. 570, 580 (2008); *see also id.* at 581 (recognizing "a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans"). Given the question before the Court in *Heller*, however, these statements were meant only show that the Second Amendment codifies an individual right, not a collective right that can be exercised only through participation in a militia. The statements did not construe that right's *scope*.

Regardless, the government's textual argument here does not rest on excluding indicted defendants from "the people."[1] It rests instead on the scope of the "pre-existing right" codified by the Second Amendment's text. *See Heller*, 554 U.S. at 592. (Gov't Br. 18–19.) "[T]he history of the 'pre-existing right' of 'the people' to 'keep and bear arms,' codified in the Second Amendment, demonstrates that the Second Amendment right extended, and continues to extend, 'to some categories of individuals, but not others.'" *United States v. DaSilva*, No. 3:21-CR-267, 2022 WL 17242870, at *7 (M.D. Penn. Nov. 23, 2022) (quoting *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1044 (11th Cir. 2022)). So "even individuals who are indisputably part of 'the people' … might not partake of that pre-existing right and, therefore, may be prohibited from possessing firearms without offending the Second Amendment." *Id.* (quoting *Jimenez-Shilon*, 34 F.4th at 1045–46).

This reasoning does not improperly "conflate" *Bruen*'s textual and historical inquiries. (*See* Def. Br. 19, 20 n.5.) *Bruen* never said that history matters *only* to its second, historical-tradition inquiry. Text does not exist in a vacuum. To determine whether the Second Amendment's textual scope covers a person's conduct, a court must ascertain the text's "original

---

[1] Many courts have indeed held that "the people" excludes some groups. *See, e.g.*, *Range v. Att'y Gen.*, 53 F.4th 262, 284 (3d Cir. 2022), *reh'g en banc granted, opinion vacated*, 56 F.4th 992 (3d Cir. 2023); *United States v. Grinage*, No. SA-21-CR-00399-JKP, 2022 WL 17420390, at *5 (W.D. Tex. Dec. 5, 2022); *United States v. Hill*, No. CR H-22-249, 2022 WL 17069855, at *4 (S.D. Tex. Nov. 17, 2022).

public meaning," *see Ramos v. Louisiana*, 140 S. Ct. 1390, 1396 (2020), since "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them," *see Bruen*, 142 S. Ct. at 2136 (quoting *Heller*, 554 U.S. at 634–635). *Bruen* explicitly commanded "reliance on history to inform the meaning of constitutional text—especially text meant to codify a *pre-existing* right." 142 S. Ct. at 2130.

Thus, *Bruen*'s first, textual step is itself informed by the Second Amendment's history. The amendment's text covers no more conduct than did the preexisting right that the text codified; the text excludes groups of people whom the preexisting right did not cover, no matter whether they are part of "the people." *See DaSilva*, 2022 WL 17242870, at *7.

**2.** The preexisting right codified by the Second Amendment's text covers only law-abiding citizens. Although Quiroz denies that *Heller* and *Bruen* explicitly limited the scope of the right to law-abiding citizens (*see* Def. Br. 17–18), both opinions did so at least by unmistakable implication. *Heller*, for instance, explained that it was unsurprising that the Court had not previously resolved whether the Second Amendment codified an individual or collective right because, for most of the nation's history, the Bill of Rights did not apply to the states, and "the Federal Government did not significantly regulate the possession of firearms *by law-abiding citizens*." 554 U.S. at 625 (emphasis added). That observation mattered because, the

5

Court implied, it would be called on to construe the Second Amendment only if governments *did* regulate law-abiding citizens.

*Bruen* put even more emphasis on law-abiding citizens as the holders of the Second Amendment right. The majority used the phrase "law-abiding" at least 11 times. *See Bruen*, 142 S. Ct. at 2122, 2125, 2131, 2133, 2134, 2138, 2150, 2156. For instance, in describing its second, historical-tradition inquiry, the Court said that it was relevant "how and why [historical] regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. The Court referred to regulations burdening law-abiding citizens because a regulation burdening *non*-law-abiding citizens would not reach the historical-tradition inquiry to begin with. The court repeated this phrasing throughout its discussion and application of the historical-tradition inquiry. *See id.* at 2138, 2150, 2156. Last, the Court restated its holding, emphasizing yet again that the Second Amendment applied because the law at issue burdened law-abiding citizens: "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 2156.

The government cited three other aspects of *Bruen* confirming that a person's status as non-law-abiding counts at *Bruen*'s first, textual step: (1) the Court noted the petitioners' law-abiding status at the first step; (2) the Court set contrary presumptions depending on whether a law burdens law-abiding citizens; and (3) the Court preserved the

6

constitutionality of shall-issue licensing laws, whose objective criteria ensure that applicants are, in fact, law-abiding. (Gov't Br. 20–22.) These aspects of the opinion reinforce the Court's unmistakable implication that the amendment's text excludes non-law-abiding citizens. Quiroz acknowledges them only in a footnote lacking substantive analysis and, again, misstates the government's arguments as resting on the term "the people." (*See* Def. Br. 20 n.5.)

In *Bruen's* wake, many courts have agreed—without resting their analyses on "the people"—that *Heller* and *Bruen* limit the Second Amendment's scope to law-abiding citizens. Indeed, "[t]he majority of courts have concluded that the [Second Amendment] right extends only to law-abiding citizens." *United States v. Black*, No. CR 22-133-01, 2023 WL 122920, at *3 (W.D. La. Jan. 6, 2023) (collecting cases); *see also Battles v. United States*, No. 4:23-CV-00063-HEA, 2023 WL 346002, at *1 (E.D. Mo. Jan. 20, 2023) ("*Bruen* confines its holding to the context of regulations that 'burden a *law-abiding citizen's* right to armed self defense."); *United States v. Medrano*, No. 3:21-CR-39, 2023 WL 122650, at *1–2 (N.D.W. Va. Jan. 6, 2023) (noting that *Bruen's* "rationale is firmly built upon its chosen 'law-abiding' language, which appears throughout," and holding that "the reach of *Bruen* ends at the feet of those individuals who are not law-abiding citizens"); *United States v. Sanchez*, No. W-21-CR-00213-ADA, 2022 WL 17815116, at *1 (W.D. Tex. Dec. 19, 2022) ("The Supreme Court has held that the right to bear arms is limited to 'law-abiding, responsible

7

citizens.'"); *United States v. Hunter*, No. 1:22-CR-84-RDP-NAD-1, 2022 WL 17640254, at *6 (N.D. Ala. Dec. 13, 2022) (noting the language in *Bruen* "limiting the scope of the Second Amendment right to 'law abiding' citizens"); *United States v. Grant*, No. CR 3:22-161-MGL-1, 2022 WL 16541138, at *3 (D.S.C. Oct. 28, 2022) ("By distinguishing non-law-abiding citizens from law-abiding ones, the *dicta* in *Heller* and *McDonald* clarifies the bounds of the plain text of the Second Amendment."). These cases are no less persuasive here because they deal with non-law-abiding citizens other than indicted defendants, such as convicted felons. (*See* Def. Br. 18–19 & n.4.) Their relevant holding is that the Second Amendment's text excludes non-law-abiding citizens; who qualifies as non-law-abiding is a separate question (addressed next).

**3.** A felony indictment supplies sufficient evidence that an indicted defendant is non-law-abiding to exclude him from the Second Amendment's scope. Had the Supreme Court so intended, it could have described the Second Amendment's scope as extending to those who have never been *convicted* of a felony. Instead, the Court repeatedly deployed "its chosen 'law-abiding' language" in both *Heller* and *Bruen*. *See Medrano*, 2023 WL 122650, at *1. *Heller*, moreover, identified "felons and the mentally ill" as merely items on a *non*-exhaustive list of people excluded from the Second Amendment's scope. *See* 554 U.S. at 626–27 & n.26.

The difference between "non-law-abiding" and "felon" is substantive. "Law-abiding" means simply "abiding by or obedient to the law." *Law-*

8

*Abiding*, Merriam-Webster (Jan. 27, 2023), https://www.merriam-webster.com/dictionary/law-abiding. A person can fail to obey the law without ever encountering the criminal-justice system, much less sustaining a criminal conviction. The question, then, is what *evidence* is sufficient under the Second Amendment to exclude someone from the community of law-abiding citizens. A felony conviction certainly suffices since it reflects a guilty plea or proof beyond a reasonable doubt that the person committed a serious crime. *See, e.g.*, *Medrano*, 2023 WL 122650, at *1–2.

But because a person can be non-law-abiding without a conviction, other evidence must suffice too. For instance, a qualifying domestic-violence restraining order under § 922(g)(8) suffices even though the restrained person "need not have been convicted of an offense involving domestic violence." *United States v. Bena*, 664 F.3d 1180, 1184 (8th Cir. 2011). Quiroz tries to distinguish *Bena* because a qualifying restraining order under § 922(g)(8) requires "an adversarial hearing" (Def. Br. 22), whereas § 922(n) requires only a grand jury's probable-cause finding. But, like a felony conviction, an adversarial hearing has never been identified by the Supreme Court as a necessary condition to qualify as non-law-abiding under the Second Amendment.

Indeed, since *Bruen*, courts have rejected Second Amendment challenges to § 922(g)(3), prohibiting gun possession by "an unlawful user of or addict[] to any controlled substance," even though that statute requires no judicial process at all to trigger its prohibition. *See, e.g.*, *Sanchez*, 2022

9

WL 17815116, at *1–3. *Sanchez* recognized that *Heller* held—and *Bruen* "recently confirmed"—that "the right to keep and bear arms belongs only to 'law-abiding citizens.'" *Id.* at *1. The court upheld § 922(g)(3) at *Bruen*'s first, textual step because it "limits only persons that are not law-abiding from obtaining firearms and thus does not cover conduct protected by the Second Amendment." *Id.* at *3; *see also United States v. Seiwert*, No. 20 CR 443, 2022 WL 4534605 (N.D. Ill. Sept. 28, 2022) (agreeing with the government that unlawful drug users or addicts under § 922(g)(3) "are not, by definition, law-abiding citizens" and so "fall outside the Second Amendment's protection"). Because § 922(n) requires an indictment, it requires *more* judicial process to trigger its prohibition than does § 922(g)(3).

A felony indictment establishes that the indicted defendant is not law-abiding under the Second Amendment. (Gov't Br. 26–27.) An indictment "'conclusively determines the existence of probable cause' to believe the defendant perpetrated the offense alleged." *Kaley*, 571 U.S. at 328 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975)). An indictment requires an evidentiary—if not adversarial—proceeding before a neutral grand jury. *See id.* And the grand jury's "inviolable" probable-cause finding "may do more than commence a criminal proceeding (with all the economic, reputational, and personal harm that entails); the determination may also serve the purpose of immediately depriving the accused of her freedom." *Id.* at 328.

Quiroz misses the point in arguing that an indictment does not "extinguish[]" the indicted defendant's other constitutional rights but allows the government to restrict them. (*See* Def. Br. 22–23.) Those other rights have not been *explicitly limited in scope* to law-abiding citizens by the Supreme Court; the Second Amendment right has. (*See supra*, Part II-2; *see also* Gov't Br. 18–25.) Thus, "[t]he grand jury that is good enough—reliable enough, protective enough—to inflict those other grave consequences through its probable cause findings," *see Kaley*, 571 U.S. at 330, must also be good enough to serve the analogous function of establishing that an indicted defendant is not law-abiding under the Second Amendment.[2]

Quiroz relies on the "presumption of innocence" to argue that indicted defendants are law-abiding. (Def. Br. 20–22.) But that presumption only allocates the burden of proof at trial; it does not protect a defendant's rights before trial. *Bell v. Wolfish*, 441 U.S. 520, 533 (1979); *see Wendt*, 2023 WL 166461, at *12 (rejecting the defendant's argument based on the presumption of innocence because "the Second Amendment contains enough leeway to allow pretrial restrictions on firearm possession");

---

[2] Practically speaking, almost all indicted defendants are ultimately convicted. For instance, during the 12-month period ending September 30, 2022, more than 91 percent of federal criminal dispositions involved conviction and sentencing. *See* United States Courts, *Caseload Statistics Data Tables, Table D-4—U.S. District Courts–Criminal Judicial Business* (September 30, 2022), https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables. The slim chance that an indicted defendant will not be convicted weighs against assigning constitutional significance to the distinction between indicted felony defendants and convicted felons in determining who qualifies as non-law-abiding.

*United States v. Fencl*, No. 21-CR-3101 JLS, 2022 WL 17486363, at \*2 (S.D. Cal. Dec. 7, 2022) (holding that the presumption "does not deprive the Government of the ability to place significant, but temporary, restrictions on an accused's constitutional rights"). Thus, it would not "subvert[]" the presumption of innocence (Def. Br. 21 n.6) to hold that an indictment is sufficient to establish that the defendant is non-law-abiding for purposes of the Second Amendment.[3]

## III. Section 922(n) squares with the nation's historical tradition.

At *Bruen*'s second, historical-tradition step, the parties' dispute turns on how rigidly the Court should demand founding-era precursors exactly like § 922(n). According to Quiroz, § 922(n) flunks *Bruen*'s historical test absent "law[s] specifically prohibiting indictees from obtaining firearms." (Def. Br. 32; *see also id.* at 29 (demanding "historical regulations … blanketly criminalizing an indictee's receipt of a firearm").) But *Bruen* is not so rigid. It requires only a tradition of regulating guns in similar ways for similar reasons. The nation's historical tradition supports § 922(n)'s narrow restriction on indicted felony defendants.

---

[3] Quiroz ignores *Bell* and cites *Coffin v. United States*, 156 U.S. 432 (1895). (*See* Def. Br. 20–21.) *Coffin* does not support Quiroz's argument. *Coffin* considered the presumption of innocence in the context of deciding whether a jury charge properly described the applicable burdens and presumptions. *See* 156 U.S. at 456–61. It did not suggest that the presumption of innocence protects indicted defendants from being deemed non-law-abiding for purposes other than trial.

**1.** *Bruen* did not purport to "establish[] an exacting framework for demonstrating a historical tradition." (*See* Def. Br. 25.) Just the opposite, it vowed that its historical inquiry is not "a regulatory straightjacket." *Bruen*, 142 S. Ct. at 2133. The inquiry "requires only that the government identify a well-established and representative historical analogue, not a historical twin." *Id.* "[A] modern-day regulation [need] not [be] a dead ringer for historical precursors." *Id.*; *see also id.* at 2157 (Alito, J., concurring) (noting limits on the Court's holding, including that it "decides nothing about who may lawfully possess a firearm," "the requirements that must be met to buy a gun," or "the kinds of weapons that people may possess"), 2162 (Kavanaugh, J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations." (quoting *Heller*, 554 U.S. at 636)).

Nor did *Bruen* purport to create distinct "straightforward" and "nuanced" approaches. (*See* Def. Br. 27–30.) The cited part of the opinion used no mandatory or absolute language. It merely offered guidance on how courts "may" approach cases depending on their context. *See Bruen*, 142 S. Ct. at 2132. Courts making the historical-tradition inquiry have thus recognized that they can take both "straightforward" and other approaches to the *same case* as needed. *See, e.g.*, *United States v. Williams*, No. 121CR00362LMMLTW, 2022 WL 18285005, at *3 (N.D. Ga. Nov. 14, 2022), *adopted*, 2022 WL 17852517 (N.D. Ga. Dec. 22, 2022) ("[I]n addition to using a straightforward historical analysis, finding a 'historical

analogue' that is 'relevantly similar' to the modern regulation is also sufficient."); *United States v. Charles*, No. MO:22-CR-00154-DC, 2022 WL 4913900, at *4 (W.D. Tex. Oct. 3, 2022) ("With the straightforward historical inquiry unclear, a more nuanced approached is necessary."). Quiroz cites no case adopting his rigid bifurcation of "approaches."

Quiroz's description of the "two approaches" (Def. Br. 29) collapses on review of *Bruen*'s own analysis. For instance, while Quiroz insists that *Bruen* set "distinctly similar" as the governing standard for its "straightforward" approach (*e.g.*, Def. Br. 27–28), *Bruen* used that phrase only once, and even then described "the lack of a distinctly similar historical regulation" only as "relevant evidence"—not as dispositive. *See* 142 S. Ct. 2131. "Distinctly similar" was not part of any rule of decision. The Court never used that phrase in its own historical analysis, *see id.* at 2135–56, despite that, according to Quiroz, the Court was "appl[ying] the 'straightforward' approach." (Def. Br. 29.)[4]

_____

[4] Nor did the Court incorporate into any rule of decision a requirement that the government "show a governmental practice that has been open, widespread, and unchallenged since the early days of the Republic." (*See* Def. Br. 27, 44 (quotation marks omitted).) Rather, in the context of noting the *limits* on the relevance of postenactment history, the Court observed that such a practice would still be relevant to its "interpretation of an ambiguous constitutional provision." *Bruen*, 142 S. Ct. 2137. The Court did not suggest that such a practice was a necessary condition to upholding a modern law. Quiroz also takes *Bruen*'s "broadly prohibiting" language out of context (Def. Br. 26 (citing 142 S. Ct. at 2138)); the Court was not setting the historical-tradition standard but describing *the challenged public-carry ban.*

Likewise, Quiroz insists that *Bruen* reserved analogical reasoning for "cases implicating unprecedented societal concerns or dramatic technological changes," and thus demanding the "nuanced" approach. (*E.g.*, Def. Br. 28, 30 n.11.) But *Bruen*'s own historical analysis explicitly reasoned by analogy despite that the challenged law addressed a persistent societal problem. *See, e.g.*, *id.* at 2131, 2145, 2153.

Finally, Quiroz gets it backwards by insisting that the Court may compare a challenged law only to "actual historical regulations," not "the Founders' views" more generally. (*See* Def. Br. 30–31.) It is precisely those founding-era views that control. *See, e.g.*, *Bruen*, 142 S. Ct. at 2132 (the Second Amendment's "meaning is fixed according to the understandings of those who ratified it"). Analogizing to historical regulations is just a way to discern those views. *See, e.g.*, *id.* at 2136 (explaining that the Court examines historical sources "to determine *the public understanding* of the Second Amendment after its ratification" (cleaned up) (quoting *Heller*, 554 U.S. at 605)).

Thus, *United States v. Kelly* stated what follows from *Bruen* "as a matter of basic logic" when it explained that courts should "not just consider what earlier legislatures did, but imagine what they could have imagined." No. 3:22-CR-00037, 2022 WL 17336578, at *2 (M.D. Tenn. Nov. 16, 2022) (upholding § 922(n) under the historical-tradition inquiry). Other courts have shared *Kelly*'s intuition. One framed the "core question" as "whether the prohibition at issue *would have been viewed* as consistent with the

Second Amendment in the founding era." *United States v. Nutter*, No. 2:21-CR-00142, 2022 WL 3718518, at *5 (S.D.W. Va. Aug. 29, 2022) (emphasis added). That court explained that, "[b]ecause the legal landscape surrounding crime and punishment was vastly different, the absence of an equivalent prohibition on firearm possession by people convicted of domestic violence offenses is not dispositive." *Id.* (footnote omitted); *see also United States v. Lewis*, No. CR-22-368-F, 2023 WL 187582, at *4 (W.D. Okla. Jan. 13, 2023) (considering how "a colonial legislature would have" assessed "the hazard presented by an armed habitual user of illegal drugs").

**2.** Three historical traditions each independently sustain § 922(n): (a) laws broadly allowing pretrial detention for serious crimes; (b) laws categorically restricting the gun rights of dangerous or untrustworthy citizens; and (c) surety laws. (Gov't Br. 29–47.)

**2.a.** Quiroz's discussion of laws allowing pretrial detention suffers from two main flaws. First, Quiroz denies that pretrial detention is a gun restriction. (*See* Def. Br. 33.) But "the temporary abridgement of … the right to bear arms" is "[i]nherent in" pretrial detention. *Fencl*, 2022 WL 17486363, at *3; *see also United States v. Slye*, No. 1:22-MJ-144, 2022 WL 9728732, at *2 n.4 (W.D. Pa. Oct. 6, 2022) (noting the lack of "precedent for a person retaining his gun while jailed and awaiting trial"). *Bruen* never suggested that modern gun restrictions cannot be supported by analogy to historical laws incidentally restricting gun rights.

16

Second, Quiroz relies on features of modern bail laws (like § 3142) to distinguish historical bail laws from § 922(n). (*See* Def. Br. 34–35.) The right comparison is to *historical* bail laws. Quiroz does not claim that historical laws (like the Judiciary Act) embraced § 3142's procedural safeguards. Nor does he dispute that the Judiciary Act broadly authorized detention for alleged felonies since most were punishable by death (even if that punishment was not always imposed). *See Range v. Att'y Gen.*, 53 F.4th 262, 281 n.4 (3d Cir. 2022) (noting that "[h]ow punishments were meted out is beside the point" since "[w]hat matters is the exposure"), *reh'g en banc granted*, *opinion vacated*, 56 F.4th 992 (3d Cir. 2023). Any marginal differences between the group historically exposed to pretrial detention (historical capital indictees) and those subject to § 922(n) (modern felony indictees) are not dispositive because *Bruen* does not demand a "dead ringer" or "historical twin." 142 S. Ct. at 2133.

**2.b.** On the tradition of categorically disarming dangerous or untrustworthy people, Quiroz misses the forest for the trees. He takes various historical sources in isolation and tries to explain why each fails to show a tradition supporting § 922(n). (*See* Def. Br. 37–43.) But he fails to respond to the government's argument: together these historical sources show a tradition of giving *legislatures* power to impose categorical gun restrictions for public-safety reasons—including power to identify groups posing a sufficient threat to warrant restrictions. (Gov't Br. 35–41.) *See Range*, 53 F.4th at 271, 282 (holding that "the historical record shows that legislatures had

17

broad discretion to prohibit those who did not respect the law from having firearms" and "to determine when individuals' status or conduct evinced such a threat sufficient to warrant disarmament"), *vacated*; *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (noting that *Heller* "tell[s] us … that the legislative role did not end in 1791"). Section 922(n) "is of a piece with the type of laws" legislatures historically enjoyed the power to impose. *Kelly*, 2022 WL 17336578, at *5 n.7.[5]

**2.c.** Aware of Bruen's reasons for rejecting surety laws as appropriate analogues to *New York's licensing law* (*see* Def. Br. 45–46), several courts have still relied on them to support modern *restrictions on indicted defendants*. *See United States v. Kays*, No. CR-22-40-D, 2022 WL 3718519, at *4–5 (W.D. Okla. Aug. 29, 2022) (upholding § 922(n)); *Fencl*, 2022 WL 17486363, at *3; *United States v. Perez-Garcia*, No. 22-CR-1581-GPC, 2022 WL 17477918, at *4–5 (S.D. Cal. Dec. 6, 2022). Cases analogizing the Bail Reform Act to surety laws are not "inapposite" (Def. Br. 45 n.13) since the same basic reasoning applies to § 922(n): surety laws show a tradition of temporarily restricting the gun rights of the accused.

Surety laws establish a historical tradition supporting § 922(n). The laws cited by the government are not too temporally distant to inform the historical analysis because some "arose" in "the colonial period." (*See*

---

[5] The government did not "favorably" cite laws disarming minorities (*see* Def. Br. 41) but presented them to give full historical context and illustrate early exercises of legislative power to restrict gun rights—while calling them "repugnant" and "unconstitutional." (Gov't Br. 37 & n.7.)

Def. Br. 46–47.) What matters is not when the laws "arose" but when they were effective. While some of the laws cited by the government were passed in the late seventeenth or early eighteenth century, they were reported in statutory compilations published around the time ratification or later, showing that they remained effective. (*See* Gov't Br. 44.)

Nor are surety laws insufficiently analogous to § 922(n) because some ostensibly required "confession" or "proof." (*See* Def. Br. 47–48, 50.) Courts generally interpret them as having required only that the restricted person was "reasonably accused." *Kays*, 2022 WL 3718519, at *5 (quoting *Bruen*, 142 S. Ct. at 2149); *see also Young v. Hawaii*, 992 F.3d 765, 820 (9th Cir. 2021) (1836 Massachusetts surety law applied to a "person accused of threatening the peace"), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022); *Wrenn v. District of Columbia*, 864 F.3d 650, 661 (D.C. Cir. 2017) (surety laws applied to "someone reasonably accused of posing a threat"). A felony indictment—requiring evidence showing probable cause that the person committed a serious crime—serves an analogous accusatory function.

## IV.  Section 922(n) is constitutional both facially and as applied to Quiroz.

Courts have indeed "strictly adhered to" *Salerno*'s standard for facial challenges in most contexts. (*See* Def. Br. 52 n.16.) When a party claims that a law's operation violates a constitutional right, the challenger "must 'establish that no set of circumstances exists under which the Act would

be valid.'" *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 449 (5th Cir. 2022) (quoting *Salerno*, 481 U.S. at 745). The Supreme Court recognizes a "second type" of facial challenge for "overbroad" laws, but "[t]his doctrine is limited to the First Amendment context." *Id.* at 450 (quotation marks omitted). *Johnson v. United States* did not address a facial challenge like Quiroz's but answered the separate question whether "a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *See* 576 U.S. 591, 602 (2015).

To defeat a facial challenge, the government need only identify some conduct subject to the challenged law that the asserted right would not protect. *See Salerno*, 481 U.S. at 745. *Cf. Wendt*, 2023 WL 166461, at *5 (holding that § 3142(c)(1)(B)(viii)'s pretrial gun restriction is not invalid in all its applications because "the Court lawfully could impose a pretrial firearms restriction on a defendant who had previously been convicted of a felony"). The government thus identified conduct subject to § 922(n) that the Second Amendment would plainly not protect. (Gov't Br. 48–49.) Quiroz does not dispute that the government's conduct examples would be unprotected but claims that it does not matter because criminal prohibitions *other than* § 922(n) would cover them. (Def. Br. 52, 54.) But the same conduct can be prohibited by multiple criminal laws; that does not render any of those laws irrelevant. Prosecution under any one of them may, for instance, affect the available penalties.[6]

---

[6] Quiroz is also wrong that the government's conduct examples would

In contrast, *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), addressed a facial Fourth Amendment challenge to a state law authorizing warrantless searches. (*See* Def. Br. 52–54.) The opponents claimed that the law could be constitutionally applied when the police had a warrant or an exception to the warrant requirement applied. *Id.* at 417–18. The Court held that those applications were irrelevant because the law did no work when the searches were independently authorized. *Id.* at 418–19. In that context, a state law authorizing a search lacked any additive effect to constitutional doctrines authorizing it. But a criminal law like § 922(n) prohibits conduct no matter whether another criminal law incidentally prohibits some of the same conduct—and it may well have an additive legal effect.

Most of all, the government identified Quiroz himself as an indicted defendant to whom § 922(n) could constitutionally be applied. (Gov't Br. 49.) In short, the government argued that, given the unique danger and flight risk Quiroz posed, his receipt of a gun would fall outside the Second Amendment's plain text—and prohibiting such receipt would square with historical tradition—even if applying § 922(n) to other indicted defendants would violate the Second Amendment. Quiroz ignores this argument. He

---

invariably be prohibited by criminal laws other than § 922(n). For instance, Quiroz cites no law prohibiting receipt of *all* dangerous and unusual weapons—weapons not "in common use at the time." *See Bruen*, 142 S. Ct. at 2128. The government regulates some specifically defined kinds of dangerous and unusual weapons, *see, e.g.*, 18 U.S.C. § 922(o), but leaves citizens free to receive other uncommon weapons (if no other prohibition applies) even though the Second Amendment would allow the government to restrict them.

says only that § 922(n) is unconstitutional as applied to him because
(a) § 922(n) is *facially* unconstitutional (which is wrong for the reasons set
forth above); and (b) no federal law *other than* § 922(n) prohibited him from
receiving a gun (which is irrelevant).

## V. Even if § 922(n) violates the Second Amendment, the district court erroneously dismissed the false-statement charge.

Finally, the district court erred in dismissing the § 922(a)(6) charge.
The government did not forfeit its argument, and Supreme Court prece-
dent defeats the district court's ruling that, if § 922(n) is unconstitutional,
Quiroz cannot be prosecuted for lying about his felony indictments.

**1.** This Court should review the district court's dismissal of the
§ 922(a)(6) charge *de novo*, not for plain error. (*See* Def. Br. 58–59.) This
Court reviews *de novo* a district court's ruling on a motion to dismiss.
*United States v. Davis*, 53 F.4th 833, 845 (5th Cir. 2022). It would review for
plain error only if the government failed to bring its position to the district
court's attention. *See* Fed. R. Crim. P. 52(b); *United States v. Cabello*, 33
F.4th 281, 285 (5th Cir. 2022). A party's objection need only be "suffi-
ciently specific to alert the district court to the nature of the alleged error
and to provide an opportunity for correction." *United States v. Peterson*, 977
F.3d 381, 393 (5th Cir. 2020). "The central inquiry for preservation pur-
poses is the specificity and clarity of the initial objection, not the [party's]
persistence in seeking relief." *United States v. Martinez-Rodriguez*, 821 F.3d
659, 663 (5th Cir. 2016) (brackets and quotation marks omitted).

The government presented its position to the district court in its response to Quiroz's original motion to dismiss. Citing the same cases as it cites on appeal, the government argued that a defendant who lies to the government lacks "standing" to challenge the underlying statute's constitutionality. (ROA.74–76 (citing *Bryson v. United States*, 396 U.S. 64 (1969); *Dennis v. United States*, 384 U.S. 855 (1966); *Kay v. United States*, 303 U.S. 1 (1938); *United States v. Kapp*, 302 U.S. 214 (1937); *United States v. Bledsoe*, 334 F. App'x 711 (5th Cir. 2009)).) That argument was not a challenge to Article III standing (*see* Def. Br. 3, 59 n.18) but was substantively the same as the government's argument on appeal, if phrased differently. (Gov't Br. 50–52.) So the argument alerted the court to the government's position.[7]

Because the government's argument on the false-statement charge succeeded, the government needed not repeat it in later proceedings. In denying Quiroz's original motion to dismiss, the district court agreed with the government that Quiroz could not defeat "a prosecution directed at [his] fraud [] based on the argument that § 922(n) is unconstitutional." (ROA.108–09 (citing *Dennis*, 384 U.S. at 867; *Kay*, 303 U.S. 1; *Kapp*, 302 U.S. 214; *Bledsoe*, 334 F. App'x at 711).) When Quiroz renewed his motion to dismiss, he made no new argument on the false-statement charge but re-urged the court to dismiss that charge "for the reasons stated in his

---

[7] Although the rule that the government urged does not invoke modern standing doctrine, the government's phrasing was understandable since some of the cited Supreme Court cases use the "standing" label. *See Dennis*, 384 U.S. at 866; *Kay*, 303 U.S. at 6.

[original] Motion to Dismiss" (ROA.207)—the reasons already addressed by the government and rejected by the court. So there was no apparent need for the government to "persist[]" in the argument it already made. *See Martinez-Rodriguez*, 821 F.3d at 663. *Cf. United States v. Castillo*, 430 F.3d 230, 242 (5th Cir. 2005) (a party need not repeat its objection if it made its position clear, and further objection would be futile).[8]

**2.** The district court erred in dismissing the § 922(a)(6) charge. The Supreme Court has held "that one who furnishes false information to the Government in feigned compliance with a statutory requirement cannot defend against prosecution for his fraud by challenging the validity of the requirement itself." *United States v. Knox*, 396 U.S. 77, 79 (1969); *accord Bryson v*, 396 U.S. at 68–72. *Knox* and *Bryson* both rejected challenges to the defendants' convictions under 18 U.S.C. § 1001, prohibiting material false statements to the government. Just as "Quiroz did not challenge § 922(a)(6)'s constitutionality" (Def. Br. 62), the *Knox* and *Bryson* defendants did not challenge § 1001's constitutionality but argued that the underlying statutory requirements were unconstitutional. Likewise, when this Court applied *Knox* and *Bryson*'s reasoning to affirm a conviction under § 922(a)(6), the constitutional challenge was not to § 922(a)(6)'s

---

[8] *United States v. Graves*, 5 F.3d 1546, 1552 (5th Cir. 1993), stands only for the principle that unsuccessfully litigating a pretrial motion *in limine* does not preserve an evidentiary objection; *Graves* does not require a party to repeat arguments it previously succeeded on. (*See* Def. Br. 60.)

prohibition of lying but to the age restrictions on buying a handgun. *Bledsoe*, 334 F. App'x at 711. (*See* Def. Br. 63.) Those cases squarely apply here.

Section 922(a)(6)'s materiality element does not change the outcome. Section 1001 also requires materiality, and so § 1001 cases like *Knox* and *Bryson* foreclose Quiroz's argument. *See also Bledsoe*, 334 F. App'x at 711 (acknowledging § 922(a)(6)'s materiality element but still rejecting Quiroz's argument). In addition, the Supreme Court rejected exactly Quiroz's argument in *Kapp*. It held that the defendants' false statements about hogs they sold to the government did not "cease[] to be material" under the False Claims Act "because of the unconstitutionality of the provisions of the Agricultural Adjustment Act" that the defendants had lied about complying with. *Kapp*, 302 U.S. at 217. Quiroz does not explain why the distinction he draws between this case and *Kapp* matters. (*See* Def. Br. 63–64.) Holding that Quiroz cannot be prosecuted under § 922(a)(6) because his statement was "immaterial" would promote the kind of "self-help" through willful deceit that the Supreme Court has repeatedly condemned. *See Bryson*, 396 U.S. at 67.[9]

---

[9] For these reasons, the court erred in dismissing the § 922(a)(6) charge in *United States v. Holden*, No. 3:22-CR-30 RLM-MGG, 2022 WL 17103509, at *5 (N.D. Ind. Oct. 31, 2022). (*See* Def. Br. 61–62.) *Holden* acknowledged none of the Supreme Court cases the government cites here, and its holding contradicts those cases.

**3.** Even if the government had to meet the other plain-error prongs, it could. (*See* Def. Br. 65–66.) Because the district court violated a principle repeatedly announced by the Supreme Court—and applied to § 922(a)(6) by this Court in an unpublished opinion, *see Bledsoe*, 334 F. App'x at 711—the error was plain. The error also affected the government's substantial rights and the fairness, integrity, and reputation of judicial proceedings because, if not corrected, Quiroz would escape punishment for a serious crime of which a jury found him guilty beyond a reasonable doubt. (ROA.109.) *Cf. United States v. Gordon*, 291 F.3d 181, 194–95 (2d Cir. 2002) (holding that a guidelines error that resulted in too low of a sentence met the third and fourth plain-error prongs).

Respectfully submitted,

JAIME ESPARZA
United States Attorney

*/s/ Charles E. Fowler, Jr.*
CHARLES E. FOWLER, JR.
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on January 27, 2023, I filed this brief through this Court's electronic case-filing system, which will serve it on all registered counsel.

/s/ Charles E. Fowler, Jr.
CHARLES E. FOWLER, JR.
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

I certify that

1. this brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 6,453 words excluding parts exempted by Rule 32(f); and

2. this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Office Word 365 in size 14 Calisto MT font.

Dated: January 27, 2023

/s/ Charles E. Fowler, Jr.
CHARLES E. FOWLER, JR.
Assistant United States Attorney