# No. 22-50834

# In the United States Court of Appeals for the Fifth Circuit

---

**United States of America,**

Plaintiff-Appellant,

v.

**Jose Gomez Quiroz,**

Defendant-Appellee.

---

On Appeal from the United States District Court
for the Western District of Texas

No. 4:22-CR-104-DC

---

**Supplemental Brief for the United States
Addressing *United States v. Rahimi*, No. 22-915**

---

Jaime Esparza
United States Attorney

Stephanie F. Cagniart
Assistant United States Attorney
Western District of Texas
903 San Jacinto, Suite 334
Austin, Texas 78701
(512) 370-1265

# Table of Contents

Table of Authorities ............................................................................. ii

Glossary................................................................................................vi

Introduction......................................................................................... 1

Argument ............................................................................................. 3

    I.    *Rahimi* clarified the analytical framework governing
        Second Amendment challenges ............................................. 3

    II.   *Rahimi* supports the government's position that Section
        922(n) is consistent with history and tradition ..................... 5

        A.   *Rahimi* confirms that the district court applied the
              wrong standard to Quiroz's facial challenge .................. 5

        B.   *Rahimi* rejected the notion that a firearm
              regulation must have a historical twin or "distinctly
              similar" analogue ........................................................... 9

        C.   *Rahimi* defeats Quiroz's attempts to escape the
              historical analogues identified by the government ...... 11

        D.   *Rahimi* confirms the district court also erred by
              considering each of the government's historical
              analogues in isolation ................................................... 17

    III.  The district court erred in dismissing the Section
        922(a)(6) count against Quiroz, regardless of the
        constitutionality of Section 922(n) ..................................... 20

Conclusion ......................................................................................... 21

Certificate of Service ........................................................................ 22

Certificate of Compliance ................................................................ 23

# Table of Authorities

## <u>Cases</u>

*Alexander v. United States,*
   686 F. Supp. 3d 608 (W.D. Mich. 2023)..........................................19

*District of Columbia v. Heller,*
   554 U.S. 570 (2008).................................................................. 7, 12

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,*
   597 U.S. 1 (2022)..............................................................5, 10, 12, 17

*Rangel-Ramirez v. United States,*
   No. 4:22-CV-829, 2024 WL 1543764
   (N.D. Tex. Apr. 9, 2024) ...................................................................18

*United States v. Adger,*
   No. CR 122-102, 2023 WL 3229933
   (S.D. Ga. May 3, 2023) ...................................................................18

*United States v. Alston,*
   No. 5:23-CR-00021-FL-RN-1,
   2023 WL 4758734 (E.D.N.C. July 18, 2023)....................................19

*United States v. Baker,*
   No. CR-23-130-G, 2024 WL 24088
   (W.D. Okla. Jan. 2, 2024) ...............................................................19

*United States v. Bangash,*
   No. 23-10228, 2024 WL 1070276
   (5th Cir. Mar. 12, 2024) ................................................................ 20

*United States v. Bartucci,*
   658 F. Supp. 3d 794 (E.D. Cal. 2023)..............................................19

*United States v. Brown,*
   No. 5:23-CR-12-CAR-CHW, 2024 WL 1773991
   (M.D. Ga. Apr. 24, 2024) ...............................................................19

*United States v. Claybrooks,*
   90 F.4th 248 (4th Cir. 2024) ..........................................................19

*United States v. Doney*,
  No. CR 23-77-BLG-SPW, 2023 WL 6442145
  (D. Mont. Oct. 3, 2023)........................................................19

*United States v. Evenson*,
  No. CR-23-24-BLG-SPW, 2023 WL 3947828
  (D. Mont. June 12, 2023)....................................................19

*United States v. Fabiano*,
  No. 2:23-CR-00001-RWS-JCF, 2023 WL 9597783
  (N.D. Ga. Nov. 21, 2023)...................................................19

*United States v. Gore*,
  No. 2:23-CR-04, 2023 WL 2141032
  (S.D. Ohio Feb. 21, 2023) .................................................19

*United States v. Hicks*,
  649 F. Supp. 3d 357 (W.D. Tex. 2023) ............................18

*United States v. Holden*, 638 F. Supp. 3d 931
  (N.D. Ind. 2022), *rev'd*, 70 F.4th 1015 (7th Cir. 2023)....................18

*United States v. Holden*,
  70 F.4th 1015 (7th Cir. 2023)................................................ 8, 18, 20

*United States v. Holder*,
  No. 1:23-CR-0123-SEG-JSA, 2024 WL 1012914
  (N.D. Ga. Mar. 9, 2024)....................................................19

*United States v. Jackson*,
  661 F. Supp. 3d 392 (D. Md. 2023) .................................19

*United States v. Kays*,
  624 F. Supp. 3d 1262 (W.D. Okla. 2022) ........................19

*United States v. Kelly*,
  No. 3:22-CR-00037, 2022 WL 17336578
  (M.D. Tenn. Nov. 16, 2022) .........................................11, 19

*United States v. Now*,
  No. 22-CR-150, 2023 WL 2717517
  (E.D. Wis. Mar. 15, 2023) ................................................19

*United States v. Ogilvie,*
  No. 2:23-CR-00063-TC, 2024 WL 2804504
  (D. Utah May 31, 2024) .................................................................19

*United States v. Pena,*
  No. 5:22-CR-249, Doc. 38 (W.D. Tex. Apr. 25, 2023) ....................19

*United States v. Perez-Garcia,*
  96 F.4th 1166 (9th Cir. 2024) ................................................. 12, 17

*United States v. Posada,*
  670 F. Supp. 3d 402 (W.D. Tex. 2023)............................................19

*United States v. Rahimi,*
  61 F.4th 443 (5th Cir. 2023), *rev'd and remanded,*
  2024 WL 3074728 (U.S. June 21, 2024).......................................... 4

*United States v. Rahimi,*
  No. 22-915, 2024 WL 3074728 (June 21, 2024).....................passim

*United States v. Reaves,*
  No. 4:22-cr-224-HEA-JMB, ECF 60
  (E.D. Mo. Jan. 23, 2023) ...............................................................18

*United States v. Rios,*
  No. SA-20-CR-00396-JKP, 2023 WL 3687369
  (W.D. Tex. May 26, 2023) ...............................................................19

*United States v. Rogers,*
  No. 5:22-CR-717, 2024 WL 692701
  (N.D. Ohio Feb. 20, 2024) ..............................................................19

*United States v. Rowson,*
  652 F. Supp. 3d 436 (S.D.N.Y. 2023) ......................................... 7, 19

*United States v. Salerno,*
  481 U.S. 739 (1987)......................................................................5, 6

*United States v. Sanchez-Tena,*
  No. 7:22-CR-160-CR-DC, Doc. 33
  (W.D. Tex. Nov. 15, 2022) ..............................................................18

*United States v. Simien*,
  655 F. Supp. 3d 540 (W.D. Tex. 2023).............................19

*United States v. Slone*,
  No. 5:22-CR-144-KKC-MAS, 2023 WL 8037044
  (E.D. Ky. Nov. 20, 2023) .............................................19

*United States v. Smith*,
  No. CR 122-081, 2023 WL 3012007
  (S.D. Ga. Mar. 29, 2023)..............................................19

*United States v. Stambaugh*,
  641 F. Supp. 3d 1185 (W.D. Okla. 2022) .........................18

*United States v. Stennerson*,
  No. CR 22-139-BLG-SPW, 2023 WL 2214351
  (D. Mont. Feb. 24, 2023) ..............................................19

*United States v. Trevino*,
  No. 2:23-CR-00066 RB, 2023 WL 8237053
  (D.N.M. Nov. 28, 2023).................................................20

*United States v. Weathers*,
  No. 4:23-CR-00031-WMR-WEJ-1,
  2024 WL 2871356 (N.D. Ga. Mar. 11, 2024)....................20

*United States v. Yancey*, No. 23-1651,
  2024 WL 317636 (8th Cir. Jan. 29, 2024) .......................20

## **Statutes**

18 U.S.C. § 922(a)(6)..................................................... 8, 20, 21

18 U.S.C. § 922(g)(8) ....................................................passim

18 U.S.C. § 922(n) ........................................................passim

## Glossary

**Gov't Op. Br.**: Appellant's Brief for the U.S. (Dec. 30, 2022)

**Gov't Reply**: Appellant's Reply Brief for the U.S. (Jan. 27, 2023)

**Gov't Supp. Br.**: Supplemental Brief for the U.S. (Apr. 10, 2023)

**Quiroz Resp.**: Brief of Defendant-Appellee (Jan. 23, 2023)

**Quiroz Supp. Brief**: Supplemental Brief of Defendant-Appellee (May 1, 2023)

# Introduction

*United States v. Rahimi*, No. 22-915, 2024 WL 3074728 (June 21, 2024), supports the government's position that 18 U.S.C. § 922(n) is consistent with the Second Amendment.

The Supreme Court held in *Rahimi* that 18 U.S.C. § 922(g)(8), which prohibits firearm possession by an individual who is subject to a domestic violence restraining order, does not violate the Second Amendment on its face or as applied to the defendant in that case. It also addressed methodological errors that courts have made in deciding Second Amendment challenges. The Court reaffirmed that when deciding a facial challenge, courts must consider whether there are any circumstances under which the statute would be constitutional rather than focus on hypothetical scenarios that might raise constitutional concerns. *Id.* at *6, *11. A statute comports with the Second Amendment if "relevantly similar" historical analogues, taken together, show that it is consistent with the principles underpinning our nation's regulatory traditions. *Id.* at *6. Proving the regulation has a "dead ringer" or "historical twin" is not necessary. *Id.* A regulation that is less burdensome than its precursors is also more likely to survive constitutional scrutiny. *Id.* at *9–*10.

1

The methodological errors that the Court corrected in *Rahimi* are the very errors that the district court made here and Quiroz urges this Court to repeat. Section 922(n) does not disarm anyone. It does, however, temporarily prevent a defendant under felony indictment from acquiring new guns while proceedings that might ultimately end in his imprisonment are ongoing. This is consistent with the principles, rooted in our nation's historical tradition, that legislatures may subject criminal defendants to a variety of restrictions—including limiting their ability to keep and bear arms—to secure their attendance at trial and preserve public safety. *Rahimi* also relied on two traditions, surety laws and going-armed laws, that the government has likewise identified as historical analogues for Section 922(n). Because Section 922(n) shares these traditions' justifications and imposes comparably fewer burdens on defendants' Second Amendment rights, it is constitutional.

The judgment below should be reversed. In the alternative, it should be vacated and remanded so that the district court may reconsider its decision in light of *Rahimi*.

## Argument

### I. *Rahimi* clarified the analytical framework governing Second Amendment challenges.

In *Rahimi*, the Supreme Court upheld Section 922(g)(8) under the Second Amendment. "Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." 2024 WL 3074728, at *5. Those provisions include surety laws, which authorized magistrates to "require individuals suspected of future misbehavior to post a bond," and "going armed" laws, which "provided a mechanism for punishing those who had menaced others with firearms." *Id.* at *8. "Taken together," these laws confirmed that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at *9. The Court recognized that "Section 922(g)(8) is by no means identical to these founding era regimes, but it does not need to be. Its prohibition on the possession of firearms by those found by a court to present a threat to others fits neatly within the tradition the surety and going armed laws represent." *Id.* (internal citation omitted).

While *Rahimi* decided only the constitutionality of Section 922(g)(8), the Court clarified how courts must analyze other Second

Amendment challenges. "[Ou]r recent Second Amendment cases," it explained, do not demand "a law trapped in amber." *Id.* at *6. As Justice Barrett emphasized in concurrence, "imposing a test that demands overly specific analogues has serious problems," including "forc[ing] 21st-century regulations to follow late-18th-century policy choices," and "assum[ing] that founding-era legislatures maximally exercised their power to regulate." *Id.* at *30 (Barrett, J., concurring).

Accordingly, courts must consider "whether the new law is 'relevantly similar' to laws that our tradition is understood to permit." *Id.* at *6. Even "when a challenged regulation does not precisely match its historical precursors, it may still be analogous enough to pass constitutional muster," so long as the law "comport[s] with the *principles* underlying the Second Amendment." *Id.* (emphasis added) (citation omitted). The panel below had sought a precursor to Section 922(g)(8) that, *inter alia*, occurred in the civil context, targeted domestic violence, and required a finding that the defendant posed a credible threat to a specific individual. *See United States v. Rahimi*, 61 F.4th 443, 455, 456–60 (5th Cir. 2023), *rev'd and remanded*, 2024 WL 3074728. This erroneous approach "require[d] a 'historical twin' rather than a

'historical analogue.'" 2024 WL 3074728, at *11 (quoting *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 30 (2022)).

The Court also reaffirmed the high bar a defendant must meet to prevail on a facial challenge. A facial challenge "is the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'" *Id.* at *6 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). "That means that to prevail, the Government need only demonstrate that [the statute] is constitutional in some of its applications." *Id.* But "the panel instead focused on hypothetical scenarios where Section 922(g)(8) might raise constitutional concerns." *Id.* at *11. That, too, was "error." *Id.*

## II. *Rahimi* supports the government's position that Section 922(n) is consistent with history and tradition.

### A. *Rahimi* confirms that the district court applied the wrong standard to Quiroz's facial challenge.

The district court adopted, and Quiroz urges this Court to embrace, a standard for assessing facial challenges that the Supreme Court squarely rejected in *Rahimi. See* Quiroz Resp. 52 & n.16 (claiming that "[c]ourts have not strictly adhered to the *Salerno* standard"); *id.* at 55 (arguing *Bruen* did not cite *Salerno* and "drew no distinction

5

between a facial or as-applied standard"). The district court skipped Quiroz's as-applied challenge and ruled on his broader facial challenge first. ROA.309 & n.119. It then failed to consider whether there was any circumstance under which Section 922(n) would be constitutional, emphasizing instead scenarios that it believed raised constitutional concerns. *See* ROA.304–06.

    1.  *Rahimi* confirms that the district court erred in its approach. A statute is not facially unconstitutional merely because it "might raise constitutional concerns" in some "hypothetical scenarios." *Rahimi*, 2024 WL 3074728, at *11. Rather, the proper standard requires the defendant "to 'establish that no set of circumstances exists under which the Act would be valid.'" *Id.* at *6 (quoting *Salerno*, 481 U.S. at 745).

    The government maintains that Section 922(n) is constitutional in all of its applications. The Court was careful in *Rahimi* to specify that its precedents did not "suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *Id.* at *9. It also reiterated that prohibitions on firearm possession by felons are "presumptively lawful." *Id.* at *10 (quoting *District of*

*Columbia v. Heller*, 554 U.S. 570, 626, 627 n.26 (2008)).[1] Section 922(n)'s prohibition reaches only those who are facing felony charges and possible imprisonment and, as relevant here, also seek out new weapons while awaiting trial—a narrowly-defined circumstance that raises the natural inference that the defendant poses a risk of flight or harm. As one court has explained, "the period in which an indictment pends is 'a volatile period during which the stakes and stresses of pending criminal charges often motivate defendants to do violence to themselves or to others,' thereby reasonably giving rise to fear of threats or violence among the community." *United States v. Rowson*, 652 F. Supp. 3d 436, 470 (S.D.N.Y. 2023) (citation omitted).

At a minimum, Section 922(n) is constitutional in many of its applications. *See* Govt's Op. Br. 48–49 (gathering examples). For example, a defendant who has previously misused firearms, committed a violent act, or otherwise "poses a clear threat of physical violence to another," *Rahimi*, 2024 WL 3074728, at *9, would present the sort of public safety threat that states have historically attempted to prevent through firearm restrictions. *See also United States v. Holden*, 70

---

[1]    The district court dismissed this statement from *Heller* as dicta and thus "only the 'vapours and fumes of law.'" ROA.294 (citation omitted). The Supreme Court repeated this language in *Rahimi*, however. 2024 WL 3074728, at *10.

F.4th 1015, 1018 (7th Cir. 2023) (explaining that a facial challenge to Section 922(n) would likely fail because, at a minimum, some applications would involve "the sort of person who cannot be trusted with guns (say, someone under indictment for using violence against a domestic partner)").

2.  Quiroz's narrower as-applied challenge also fails, and the Court can resolve this appeal on that alternative ground. *See* Gov't Op. Br. 49; Gov't Reply 21–22. The district court did not decide Quiroz's as-applied challenge, ROA.309 & n.119, and Quiroz cannot prevail on it. Quiroz was indicted for home burglary, and then committed a second felony and breached the state's trust by jumping bail and failing to appear. ROA.55, 57, 105–06; ROA.285. While these charges were pending, Quiroz lied to a firearms dealer about his status as an indictee so that he could purchase a gun that he was not legally allowed to acquire, ROA.61, 106—two more felonies for which he was convicted by a jury before the district court dismissed the indictment, ROA.286. *See also* 18 U.S.C. §§ 922(a)(6) & 922(n). Quiroz's conduct clearly showed he presented a potential danger and flight risk. Applying Section 922(n)'s narrow restrictions to him is wholly consistent with historical traditions limiting the liberties of and detaining persons indicted for

8

serious crimes, surety laws, and laws disarming persons deemed dangerous or untrustworthy to follow the law. *See infra* Part II.C.

**B.    *Rahimi* rejected the notion that a firearm regulation must have a historical twin or "distinctly similar" analogue.**

The second methodological error that the district court and Quiroz make is to insist that the government identify "distinctly similar" analogues to Section 922(n), rather than only "relevantly similar" analogues. Quiroz Br. 7, 29; ROA.295–99. According to Quiroz, the government must identify historical "laws specifically prohibiting indictees from obtaining firearms." Quiroz Br. 32; *see also id.* at 29 (demanding "historical regulations . . . blanketly criminalizing an indictee's receipt of a firearm").

*Rahimi* forecloses this approach. *Rahimi* did not demand "distinctly similar" historical analogues but instead clarified that courts should assess whether the challenged law "is 'relevantly similar' to laws that our tradition is understood to permit." 2024 WL 3074728, at *6.[2]

---

[2]    Even Justice Thomas, in his dissent, repeatedly invoked the "relevantly similar" standard, 2024 WL 3074728 at *36, *40, *42, *43, despite explicitly concluding that Section 922(g)(8) "addresses a societal problem . . . that has persisted since the 18th century," *id.* at *36 (Thomas, J., dissenting) (quotation omitted). Thus, not a single justice read *Bruen* as having created a two-tiered test under which some modern regulations require a "relevantly similar" historical analogue and others a "distinctly similar" analogue.

This requires courts to look at historical analogues to determine "whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition." *Id.* (emphasis added) (citing *Bruen*, 597 U.S. at 26–31). The Court expressly rejected any suggestion that the Second Amendment permits only "those regulations identical to ones that could be found in 1791." *Id.* It held that Section 922(g)(8) comports with the Second Amendment because the historical record demonstrated a tradition of "preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at *5. This was so even though these laws were "by no means identical" to Section 922(g)(8)'s prohibition on the possession of firearms by certain persons subject to domestic violence restraining orders. *Id.* at *9.

To be sure, the existence of founding-era statutes that categorically disarmed persons under felony indictment would be "a strong indicator" that Section 922(n) "fall[s] within a permissible category of regulations." *Id.* at *6. But the central lesson from *Rahimi* is that the absence of one does not spell doom for Section 922(n)—and more, that it would be reversible error to require such a "historical twin." *Id.* at *11. Past lawmakers' failure to adopt a given regulation simply does not reflect doubts about its constitutionality. The idea of adopting such a

10

regulation may not have occurred to or been a priority for the founders, who are not presumed to "maximally exercise[] their power to regulate." *Id.* at *30 (Barrett, J., concurring); *see also United States v. Kelly*, No. 3:22-CR-00037, 2022 WL 17336578, at *6 (M.D. Tenn. Nov. 16, 2022) (explaining that otherwise, restrictions the Founders would have "*believed to be permissible*" would fail solely because they "*happened [not] to exist* in the founding era"). Because Section 922(n) is consistent with the principles underpinning our regulatory tradition, *see infra* Part II.C, it passes constitutional muster.

### C. *Rahimi* defeats Quiroz's attempts to escape the historical analogues identified by the government.

Quiroz urges this Court to disregard the historical analogues and traditions identified by the government in support of Section 922(n)'s constitutionality. *Rahimi* confirms these criticisms are ill-founded.[3]

1.  Quiroz argues that the government's historical analogues are not relevant because they did not directly regulate firearms.[4] Quiroz

---

[3]    The government preserves its argument that, as a matter of constitutional text, the pre-existing right codified by the Second Amendment does not include the receipt of firearms by individuals under felony indictment. Gov't Op. Br. 18–27 & Gov't Reply 3–12. *Rahimi* did not address this argument and it is an independent basis for rejecting Quiroz's constitutional challenge.

[4]    Quiroz does not dispute that the long-standing authority of officers to seize a suspect's weapons upon arrest is a direct restriction on firearms, but argues this analogue is inapt because it relates solely to the ability to disarm during custody. Quiroz Supp. Br. 29-30. But this practice establishes the principle that the government can restrict Second Amendment rights during the sensitive period of arrest

Resp. 31, 33; Quiroz Supp. Br. 9, 17, 24–25. But *Rahimi* confirms that in assessing the Second Amendment's original meaning, courts are not confined to firearm regulations. For example, the government relies on the historical surety tradition to sustain Section 922(n). *Rahimi* relied on that same tradition to sustain Section 922(g)(8), even though that tradition was not limited to "target[ing] the misuse of firearms." 2024 WL 3074728, at *8. That approach is consistent with the Supreme Court's practice of consulting a "variety of legal and other sources" in assessing the Second Amendment's original meaning, *Heller*, 554 U.S. at 605, including English history, *id.* at 598–600; analogous provisions in state constitutions, *id.* at 600–03; Second Amendment precursors, *id.* at 604–05; commentary, *id.* at 605–10, 616–19; case law, *id.* at 610–14; and legislative debates, *id.* at 614–16. *See also Bruen*, 597 U.S. at 20–21; *United States v. Perez-Garcia*, 96 F.4th 1166, 1191 (9th Cir. 2024) (agreeing that "although traditional firearm regulations are an important source of historical evidence, they are not the only one").

 *Rahimi* also recognized that a historical precursor's use of different consequences to address a societal concern does not necessarily

---

and custody. Section 922(n) also restricts rights during the sensitive period when the defendant faces a felony trial—but to a significantly lesser extent by prohibiting only the receipt of new firearms.

render it an inapt analogue. For example, *Rahimi* did not discount going-armed laws—on which the government also relies to sustain Section 922(n)—because they authorized imprisonment as punishment. 2024 WL 3074728, at *10. The Court explained that "if imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible." *Id.*

The historical analogues identified by the government in support of Section 922(n) likewise had the effect of restricting defendants' access to firearms, and Quiroz's objections to them are without merit. *See, e.g.*, Quiroz Resp. 33–34, 49–50; Quiroz Supp. Br. 20–28. Laws disarming dangerous persons and historical arrest procedures directly restricted access to firearms for safety purposes. Gov't Op. Br. 35, 40–41; Gov't Supp. Br. 13–14; *see also Rahimi*, 2024 WL 3074728, at *9 (violations of going armed laws were punished "with 'forfeiture of the arms . . . and imprisonment'" (citation omitted)). In the Founding era, criminal defendants indicted on serious charges were ordinarily subject to detention without bail to protect the public and secure attendance at trial, which had the effect of completely disarming those defendants. *See* Gov't Op. Br. 32–34; Gov't Supp. Br. 11. Even a defendant

released on bail was subject to restrictions far more onerous than those imposed by Section 922(n), including the control of "sureties" who acted as his legal custodian with authority over his person and could terminate his release. These restrictions, too, were to preserve public safety and secure attendance at trial. Govt's Supp. Br. 11–13. "Why and how [Section 922(n)] burdens the right" therefore comports with its historical analogues. *See Rahimi*, 2024 WL 3074728, at *6

2. Quiroz and the district court also took the position that historical surety laws and laws disarming people deemed dangerous and untrustworthy to obey the law were not appropriate historical analogues. The district court embraced Quiroz's position that English laws such as the Militia Act of 1662 and English Bill of Rights have little significance in understanding the Second Amendment. *See* ROA.295; Quiroz Resp. 37. The Supreme Court confirmed, however, that they are relevant to "the history of American gun laws." *Rahimi*, 2024 WL 3074728, at *7. They were the precursors to founding-era regulations "targeting individuals who physically threatened others," including the surety laws and "going armed" laws that, taken together, established the constitutionality of Section 922(g)(8). *Id.* at *7, *9. The Supreme Court's reliance on Founding-era surety laws is also irreconcilable with

the district court's and Quiroz's position that the government cannot rely on those same laws because, according to them, those laws had little support in the historical record. *See* ROA.298; Quiroz Resp. 44–47.

3.  *Rahimi* also made clear that, in evaluating whether a restriction is compatible with the Second Amendment, courts should consider whether the restriction applies to the public generally and its duration—both of which support Section 922(n)'s constitutionality.

*Rahimi* explained that an important feature of the "regulation struck down in *Bruen* [was that it] broadly restrict[ed] arms use by the public generally." 2024 WL 3074728, at *9. Section 922(n), in contrast, applies only to a narrow and clearly defined group: persons under felony indictment. Like surety laws, other historical analogues, and Section 922(g)(8), Section 922(n) therefore "does not make the . . . faulty presumption" that individuals do not have a right to carry arms. *See id.* at *10. It permits that right to be partially burdened only based on the permissible legislative determination that defendants who seek out new weapons while under felony indictment pose a flight and safety threat. This restriction is likewise consistent with the range of liberty restrictions courts allow when a defendant is under felony indictment,

even though they might otherwise violate the defendant's constitutional rights. *See* Gov't Op. Br. 13–16; Gov't Reply 1–3.

*Rahimi* also concluded that Section 922(g)(8) was not overly burdensome and resembled "surety bonds of limited duration" because its "restriction was temporary as applied to Rahimi" and would expire once he was no longer under a restraining order "one to two years after his release from prison." 2024 WL 3074728, at *10. Section 922(n)'s restriction is of even more "limited duration": it expires as soon as the indictment is resolved. Its limited scope—only temporarily prohibiting defendants from obtaining new firearms rather than disarming them altogether—likewise confirms that it is a substantially "lesser restriction" on defendants' Second Amendment rights than what has historically been permitted. *See id.*

4.   Finally, Quiroz contends that Section 922(n) is at odds with the Second Amendment because it would restrict a defendant's access to weapons for self-defense or militia duty. Quiroz Supp. Br. 5–8, 17–18. But as the Court explained in *Rahimi*, its precedents "never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home." 2024 WL 3074728, at *10. So long as the regulation is consistent with the principles underlying the

Second Amendment, any attendant prohibition on the possession of firearms in the home is permissible. *See Bruen*, 597 U.S. at 30. Moreover, Section 922(n) only prohibits defendants from obtaining *new* weapons while they are under felony indictment. It does not restrict those defendants' right to retain firearms they already possess.

### D. *Rahimi* confirms the district court also erred by considering each of the government's historical analogues in isolation.

The district court also erred by considering each historical analogue in isolation and dismissing them based on minute differences, *see* ROA.295–99, an approach Quiroz urges this Court to follow, *see* Quiroz Resp. 37–51. *Rahimi* squarely rejects that approach. Instead, it teaches that courts must assess whether the government's historical analogues establish a principle that is consistent with the Second Amendment when "[t]aken together." 2024 WL 3074728, at *9; *see also Perez-Garcia*, 96 F.4th at 1191 (rejecting a "divide-and-conquer approach to the historical evidence" as "miss[ing] the forest for the trees"). And taken together, the historical analogues identified by the government—even if not identical to Section 922(n)—confirm the government's authority to impose restrictions on criminal defendants to ensure those defendants' presence at trial and prevent threats to public

safety in the interim. Indeed, Section 922(n) is more narrowly tailored than these precursors, as it applies only to defendants currently under felony indictment and does not disarm or entirely deprive them of their liberties.

Until the decision below, Section 922(n) had never been held unconstitutional by a court. Quiroz has defended his contrary position as consistent with a "growing majority of courts" post-*Bruen*. Quiroz Resp. 10. But in the two years since *Bruen* was decided, there have been only three decisions agreeing with the court below.[5] The overwhelming majority—at least twenty-eight to date—have agreed with the government that Section 922(n) is constitutional, relying on the historical analogues discussed above and developing the historical record on this issue.[6] Three Circuits, including the Fifth, have held that Section

---

[5]    *See United States v. Hicks*, 649 F. Supp. 3d 357, 366 (W.D. Tex. 2023), *appeal filed and stayed* (No. 23-50030); *United States v. Stambaugh*, 641 F. Supp. 3d 1185, 1190-93 (W.D. Okla. 2022); *United States v. Sanchez-Tena*, No. 7:22-CR-160-CR-DC, Doc. 33, at 1–2 (W.D. Tex. Nov. 15, 2022) (Counts, J.) (adopting prior order in *Quiroz*), *appeal filed* (No. 22-51078).

The two other decisions relied on by Quiroz have been reversed or vacated. *See United States v. Holden*, 638 F. Supp. 3d 931 (N.D. Ind. 2022), *rev'd*, 70 F.4th 1015, 1018 (7th Cir. 2023) (resolving the appeal based on Section 922(a)(6) and observing it was unlikely a court presented with the question would hold Section 922(n) is facially unconstitutional); *United States v. Reaves*, No. 4:22-cr-224-HEA-JMB, ECF 60 (E.D. Mo. Jan. 23, 2023) (vacating ECF 55 (magistrate judge's report and recommendation)).

[6]    Most of these cases were decided after initial briefing and oral argument in this appeal. *See Alexander v. United States*, 686 F. Supp. 3d 608, 619-24 (W.D. Mich. 2023); *Rangel-Ramirez v. United States*, No. 4:22-CV-829, 2024 WL 1543764, at *12-*14 (N.D. Tex. Apr. 9, 2024); *United States v. Adger*, No. CR 122-

922(n) does not plainly violate the Second Amendment under *Bruen*,[7]

and another has observed, albeit in dicta, that Section 922(n) is likely

---

102, 2023 WL 3229933, at *2-*5 (S.D. Ga. May 3, 2023), *report and recommendation adopted*, No. CR 122-102, 2023 WL 3627840 (S.D. Ga. May 24, 2023); *United States v. Alston*, No. 5:23-CR-00021-FL-RN-1, 2023 WL 4758734, at *9-*11 (E.D.N.C. July 18, 2023), *report and recommendation adopted*, No. 5:23-CR-021-FL-1, 2023 WL 7003235 (E.D.N.C. Oct. 24, 2023); *United States v. Baker*, No. CR-23-130-G, 2024 WL 24088, at *3-*6 (W.D. Okla. Jan. 2, 2024); *United States v. Bartucci*, 658 F. Supp. 3d 794, 803-08 (E.D. Cal. 2023); *United States v. Brown*, No. 5:23-CR-12-CAR-CHW, 2024 WL 1773991, at *3-*6 (M.D. Ga. Apr. 24, 2024); *United States v. Doney*, No. CR 23-77-BLG-SPW, 2023 WL 6442145, at *2-*3 (D. Mont. Oct. 3, 2023); *United States v. Evenson*, No. CR-23-24-BLG-SPW, 2023 WL 3947828, at *2 (D. Mont. June 12, 2023); *United States v. Fabiano*, No. 2:23-CR-00001-RWS-JCF, 2023 WL 9597783, at *8-*10 (N.D. Ga. Nov. 21, 2023), *report and recommendation adopted*, No. 2:23-CR-1-RWS, 2024 WL 196480 (N.D. Ga. Jan. 17, 2024); *United States v. Gore*, No. 2:23-CR-04, 2023 WL 2141032, at *3-*5 (S.D. Ohio Feb. 21, 2023); *United States v. Holder*, No. 1:23-CR-0123-SEG-JSA, 2024 WL 1012914, at *2 (N.D. Ga. Mar. 9, 2024); *United States v. Jackson*, 661 F. Supp. 3d 392, 413–15 (D. Md. 2023); *United States v. Kays*, 624 F. Supp. 3d 1262, 1267-68 (W.D. Okla. 2022); *United States v. Kelly*, No. 3:22-CR-00037, 2022 WL 17336578, at *3-*6 (M.D. Tenn. Nov. 16, 2022); *United States v. Now*, No. 22-CR-150, 2023 WL 2717517, at *7-*9 (E.D. Wis. Mar. 15, 2023), *report and recommendation adopted*, No. 22-CR-150, 2023 WL 2710340 (E.D. Wis. Mar. 30, 2023); *United States v. Ogilvie*, No. 2:23-CR-00063-TC, 2024 WL 2804504, at *3-*7 (D. Utah May 31, 2024); *United States v. Pena*, No. 5:22-CR-249, Doc. 38 (W.D. Tex. Apr. 25, 2023), *appeal filed and stayed* (No. 23-50717); *United States v. Posada*, 670 F. Supp. 3d 402, 410-11 (W.D. Tex. 2023); *United States v. Rios*, No. SA-20-CR-00396-JKP, 2023 WL 3687369, at *1-2 (W.D. Tex. May 26, 2023), *appeal filed and stayed* (No. 23-50785); *United States v. Rogers*, No. 5:22-CR-717, 2024 WL 692701, at *7-*9 (N.D. Ohio Feb. 20, 2024); *United States v. Rowson*, 652 F. Supp. 3d 436, 463-72 (S.D.N.Y. 2023); *United States v. Simien*, 655 F. Supp. 3d 540, 551-52 (W.D. Tex. 2023), *appeal filed and stayed* (No. 23-50870); *United States v. Slone*, No. 5:22-CR-144-KKC-MAS, 2023 WL 8037044, at *4-*6 (E.D. Ky. Nov. 20, 2023); *United States v. Smith*, No. CR 122-081, 2023 WL 3012007, at *3-*4 (S.D. Ga. Mar. 29, 2023), *report and recommendation adopted*, No. CR 122-081, 2023 WL 3010178 (S.D. Ga. Apr. 19, 2023); *United States v. Stennerson*, No. CR 22-139-BLG-SPW, 2023 WL 2214351, at *2 (D. Mont. Feb. 24, 2023); *United States v. Trevino*, No. 2:23-CR-00066 RB, 2023 WL 8237053, at *5-*7 (D.N.M. Nov. 28, 2023); *United States v. Weathers*, No. 4:23-CR-00031-WMR-WEJ-1, 2024 WL 2871356, at *20-23 (N.D. Ga. Mar. 11, 2024), *report and recommendation adopted*, No. 4:23-CR-00031-WMR, 2024 WL 2864678 (N.D. Ga. June 6, 2024).

7    *See, e.g.*, *United States v. Bangash*, No. 23-10228, 2024 WL 1070276, at *1 (5th Cir. Mar. 12, 2024) (per curiam); *United States v. Claybrooks*, 90 F.4th 248,

constitutional.[8] *Rahimi* confirms that these decisions—not the small number of opinions that have gone the other way—properly apply Supreme Court precedent.

## III. The district court erred in dismissing the Section 922(a)(6) count against Quiroz, regardless of the constitutionality of Section 922(n).

*Rahimi* does not directly affect the government's argument that the district court erred in dismissing Count One, which charged Quiroz for violating Section 922(a)(6) by "mak[ing] a false . . . statement . . . with respect to any fact material to the lawfulness of the sale" of a gun. 18 U.S.C. §922(a)(6); Gov't Op. Br. 50–52; Gov't Reply 22–25. As the government has previously explained, a person cannot defend against a charge of lying about compliance with a statutory requirement by claiming that the requirement is unconstitutional. Gov't Op. Br. 50; Gov't Reply 24–25; *see also Holden*, 70 F.4th at 1018 (reinstating a Section 922(a)(6) charge because "a truthful answer to the question 'are you under indictment?' can be material to the propriety of a firearms sale, whether or not all possible applications of §922(n) comport with the Second Amendment"). Thus, regardless of the

---

255–56 (4th Cir. 2024); *United States v. Yancey*, No. 23-1651, 2024 WL 317636, at *2 (8th Cir. Jan. 29, 2024) (per curiam).

[8]     *Holden*, 70 F.4th at 1017–18.

constitutionality of Section 922(n), and even if the Court vacates and remands to the district court for further consideration in light of *Rahimi*, it should reverse the lower court's judgment dismissing the Section 922(a)(6) count against Quiroz.

## Conclusion

The government respectfully requests that the Court reverse the judgment below. If the Court determines that it is appropriate for the district court to reconsider Quiroz's challenge to Section 922(n) in the first instance in light of *Rahimi*, the government respectfully requests that the Court vacate and remand for further consideration on that issue, and reverse the district court's judgment dismissing the Section 922(a)(6) count against Quiroz.

Respectfully submitted,

Jaime Esparza
United States Attorney

*/s/ Stephanie F. Cagniart*
By:  Stephanie F. Cagniart
Assistant United States Attorney

## Certificate of Service

I certify that on July 10, 2024, I filed this brief through this Court's electronic case-filing system, which will serve it on all registered counsel.

*/s/ Stephanie F. Cagniart*
Stephanie F. Cagniart
Assistant United States Attorney

## Certificate of Compliance

I certify that:

(1) this brief contains 4,751 words; and

(2) this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Office Word 365 in size Georgia font.

Dated:  July 10, 2024

*/s/ Stephanie F. Cagniart*
Stephanie F. Cagniart
Assistant United States Attorney